606 A.2d 467

**COMMONWEALTH of Pennsylvania, Appellant,**

v.

**Kenneth MORGAN.**

Superior Court of Pennsylvania.

Argued Sept. 24, 1991.

Filed March 6, 1992.

Reargument Denied May 8, 1992.

2

Joseph J. Mittleman, Asst. Dist. Atty., Media, for Com., appellant.

Patrick J. Connors, Asst. Public Defender, Media, for appellee.

Before ROWLEY, President Judge, and McEWEN and TAMILIA, JJ.

TAMILIA, Judge:

The Commonwealth takes this appeal from the October 11, 1989 Order granting defendant Kenneth Morgan's motion to suppress evidence. The sole issue presented by the Commonwealth for our review is whether the trial court erred in its determination that defendant's waiver of his right to counsel resulted from improper police inducements. We hold defendant's waiver of his *Miranda* right was not

knowing and voluntary under the circumstances, and, therefore, we affirm the suppression Order of the trial court.

■ This Court's standard of review in suppression questions is limited to the evidence of the defense, and so much of the evidence of the prosecution which, as read in the context of the record as a whole, remains uncontradicted. *Commonwealth v. Robinson*, 518 Pa. 156, 541 A.2d 1387 (1988). When the factual findings of the suppression court are supported by the evidence, we may reverse only if there is an error in the legal conclusions drawn from those factual findings. *Commonwealth v. Fromal*, 392 Pa.Super. 100, 572 A.2d 711 (1990).

The facts of this case are as follows. In the morning of October 18, 1988, Detective William Costello of the Yeadon Borough Police Department telephoned Kenneth Morgan at his home and asked him to come to the police station for questioning in regard to a stolen car that was found bearing Morgan's fingerprints. Detective Costello advised Morgan of his *Miranda* rights and Morgan waived his rights and admitted taking the car. The detective then asked Morgan about four armed robberies of pizza delivery men which had occurred in Yeadon, as well as a recent homicide in the borough. Prior to taking any statements from Morgan regarding the pizza robberies, however, Detective Costello told Morgan he would inform the district attorney of Morgan's cooperation and, aware of Morgan's interest, Detective Costello told Morgan he would try to help him join the Navy. Detective Costello also told Morgan's mother he would inform the district attorney of Morgan's cooperation. Morgan was not advised he was a suspect in the pizza robberies or the homicide, and he was not given subsequent *Miranda* warnings before being questioned about the robberies. Morgan admitted his participation in the robberies and provided Detective Costello with other information concerning the robberies. During the course of this discussion, the detective took written notes reflecting the content of Morgan's answers. Morgan was then asked to read over Detective Costello's written form and sign it, which he did.

Following this interview, Morgan was permitted to leave the police station without being arrested for either the car theft or the pizza robberies, as Morgan agreed to cooperate with the police in their investigations of the pizza robberies and the homicide. Morgan met with Detective Costello and Officer Robert Boyden several times over the next few days, and at one point Officer Boyden gave Morgan twenty dollars. On October 4, 1988, Detective Costello again telephoned Morgan and requested he come to the police station. Upon Morgan's arrival, Detective Costello again advised him of his *Miranda* rights and proceeded to take a formal statement from Morgan concerning the pizza robberies. After Morgan signed his statement, he was placed under arrest and charged with the robberies.

In making its determination, the trial court relied on the Supreme Court's recent decision in *Commonwealth v. Gibbs*, 520 Pa. 151, 553 A.2d 409 (1989), *cert. denied, Pennsylvania v. Gibbs*, 493 U.S. 963, 110 S.Ct. 403, 107 L.Ed.2d 369. In *Gibbs*, the defendant was being questioned in connection with a crime, and immediately after he was informed of his *Miranda* rights, he made the statement, "Maybe I should talk to a lawyer. What good would it do me to tell you?" In response, the police officer said, "The only thing is I would tell the District Attorney you cooperated for whatever good that would be...." *Id.*, 520 Pa. at 153, 553 A.2d at 409. The Supreme Court held "the statement by the authorities to [defendant] was an impermissible inducement and thereby tainted his admissions. By conveying the distinct impression that the district attorney would be told of his cooperation in giving a confession on the spot, there occurred an inescapable inducement which cannot be condoned under our law." *Id.*, 520 Pa. at 155, 553 A.2d at 410–411.

> For while we recognize that the police have a legitimate responsibility to conduct investigations, including interrogations, criminal suspects have a constitutional right to make up their own minds as to whether they want the *Miranda* protections. Promises of benefits or special considerations, however benign in intent, comprise the

sort of persuasions and trickery which easily can mislead suspects into giving confessions. The process of rendering *Miranda* warnings should proceed freely without any intruding frustration by the police. Only in that fashion can we trust the validity of subsequent admissions, for if the initial employment of *Miranda* is exploited illegally, succeeding inculpatory declarations are compromised. Misleading statements and promises by the police choke off the legal process at the very moment which *Miranda* was designed to protect.

*Id.,* 520 Pa. at 155, 553 A.2d at 411.

The Commonwealth contends the trial court applied the brush of *Gibbs* too broadly to the canvas of this case, inasmuch as *Gibbs* "narrowly focuses on the issue of whether the Trooper's response ... constituted an impermissible misleading inducement to the Appellant not to pursue further his ambiguous and equivocal inquiry regarding the presence of an attorney." *Id.,* 520 Pa. at 153, 553 A.2d at 410. The Commonwealth argues this issue does not arise here, "since Morgan had already waived his *Miranda* rights before the alleged inducement occurred. The statement was made not to induce Morgan to waive his *Miranda* rights." (Brief of Appellant at 9.)

This argument misses the thrust of *Gibbs* for several reasons. In *Gibbs,* the Supreme Court concluded its decision by holding "authorities are not permitted to employ inducements which impair in any way a suspect's right to his own unfettered evaluation of the need for legal counsel. *Miranda* and its *progeny* ... otherwise would make no sense." *Gibbs, supra,* 520 Pa. at 156, 553 A.2d at 411 (emphasis added). This pronouncement, applied in *Gibbs* to the right to counsel, was also intended by the *Gibbs* Court to extend to all of the rights elucidated in *Miranda* and subsequent derivative case law, including the right to remain silent.

The waiver of the right to remain silent, thereby incriminating oneself, is a more significant waiver than waiving the right to counsel. By waiving this right, the case obtained by the Commonwealth is advanced far more toward

6

ultimate conviction than waiving the right to counsel. With or without counsel, the accused still might not have incriminated himself or refused to give incriminating statements. It is the *inducement* which leads to overcoming resistance to police procedures with which *Gibbs* is concerned and not the specific right waived; nor is it dispositive whether the inducement occurred before or after a *Miranda* warning. *Gibbs* speaks to the fact that police cannot deliver what they promise in the inducement and, therefore, waiver of a right based upon a false promise cannot be fairly accepted as a knowing and voluntary waiver.

We, therefore, affirm the suppression Order of the trial court.

Order affirmed.

ROWLEY, P.J., dissents.